IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES, For the Use of RAMONA
EQUIPMENT RENTAL, INC., d/b/a/ ONE STOP
EQUIPMENT RENTAL & SALES,
a California corporation,

        Plaintiff,

vs.                                                                             No. 08-CV-0811 MCA/ACT

LIBERTY MUTUAL INSURANCE COMPANY;
TETRA TECH, INC.; OTAY GROUP, INC.; ALEX HALL;
STEVE LARSON; DARRIN BENDER;
BROOKS DOUGLASS;  ALEX LARSON; ROY WISE; and
WESTSIDE EQUIPMENT RENTAL AND SALES, LTD.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff Ramona Equipment Rental, Inc.'s *Motion* [Doc. 176] seeking summary judgment as to Counts IV and V of Defendant Tetra Tech, Inc.'s Amended Counterclaim. [Doc. 100] The Court has considered the papers and exhibits offered in support of and in opposition to the Motion, the relevant law, the arguments made by counsel at hearing on July 6, 2010, and is otherwise fully informed.  For the reasons set out below, the Court will **grant** the instant *Motion*.

**SUMMARY JUDGMENT STANDARDS**

Fed. R. Civ. P. 56(b) provides that "[a] party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim."  Rule 56(c)(2) provides that "[t]he judgment sought should be rendered if the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The Court of Appeals has succinctly summarized the standards governing a Rule 56 motion for summary judgment:

> Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law." A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.
> The burden of showing that no genuine issue of material fact exists is borne by the moving party. Where . . .the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citations omitted). "The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Breyers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**BACKGROUND**

In the Fall of 2007, Defendant, Tetra Tech, Inc. ("Tetra Tech"), obtained two contracts with the federal government for construction of border barrier fences in southern New Mexico along the United States-Mexico international border ("the Project"). [Doc. 195 at 9]  Tetra Tech contracted with Defendant Otay Group, Inc. ("Otay"), for labor, material, equipment and services to be used on the Project. [Doc. 195 at 9] Otay in turn entered into a written open account rental agreement with Plaintiff Ramona Equipment Rental, Inc. ("Ramona"), pursuant to

which Ramona supplied Otay with equipment to be used on the Project. [Doc. 100, ¶ 8; Doc. 195 at 3]  According to Tetra Tech, Ramona overcharged, double-billed, or otherwise improperly charged Otay for equipment, [Doc. 100, ¶¶ 35-39] and employed accounting and billing practices that were "unfair, unreasonable, improper, and outside industry standards." [Doc. 100, ¶ 40]  Otay ceased work on the project in June 2008, at which time Tetra Tech took over Otay's work. [Doc. 11, ¶ 47]  At the time it ceased work, Otay owed sums to various subcontractors, materialmen, and service providers. [Doc. 100, ¶ 65]  Tetra Tech contacted Otay's unpaid subcontractors, materialmen and service providers, including Ramona, in what Tetra Tech characterizes as "a good faith effort to resolve Otay's debts." [Doc. 195 at 5]

In July 2008, representatives of Ramona and Tetra Tech met face to face in El Paso, Texas, "in an effort to evaluate, verify and possibly satisfy [Ramona's] claimed balance with Otay." [Doc. 195 at 5]  From Tetra Tech's perspective, the purposes of the July 2008 meeting included, among other things, to discuss unpaid Ramona-Otay invoices, obtain a complete set of Ramona-Otay invoices, "address billing discrepancies identified by Tetra Tech," resolve overcharging issues," address "excessive re-rent mark up percentages" charged by Ramona, determine the reasonable value of the equipment supplied to Otay by Ramona, resolve issues regarding improper application of damage waivers, resolve improper damages assessments imposed by Ramona against Otay, and resolve issues regarding when equipment went on- or off-rent. [Doc. 195 at 5]  Tetra Tech claims that during the July 2008 meeting, Ramona misrepresented the amount of the mark up it had charged Otay and falsely represented that the amounts that Ramona had charged Otay for equipment rentals were legitimate, reasonable and within industry standards. [Doc. 100, ¶¶ 54, 55; 68, 69]  Tetra Tech also alleges that on or about July 21, 2008, Ramona provided Tetra Tech with invoices and a spreadsheet summarizing these

3

invoices. [Doc. 100,¶¶ 53, 67] According to Tetra Tech, the invoices and spreadsheet provided by Ramona misrepresented the amount of the markup that Ramona had charged Otay.[Doc. 100, ¶¶ 54, 68] In an August 7, 2008 letter, Tetra Tech advised Ramona that based upon Tetra Tech's analysis of Ramona-Otay invoices the actual amount owed to Ramona was $554,490, not $850,000 as claimed by Ramona. [Doc. 195-1 at 15] Ramona and Tetra Tech did not reach an agreement to settle for this amount, and Tetra Tech has not paid any of the outstanding invoices for equipment that Ramona provided to Otay. [Doc. 195 at 18]

On September 5, 2008, Ramona filed the present action, asserting a claim under the Miller Act, 40 U.S.C. §§ 3131, *et seq.*, as well as various state-law claims. Tetra Tech has counterclaimed, asserting, inter alia, claims for negligent misrepresentation (Count IV) and intentional misrepresentation (Count V). The instant Motion concerns these two counts.

**DISCUSSION**

New Mexico courts have adopted the formulation of the tort of negligent misrepresentation set out in Restatement (Second) of Torts § 552 (1977) ("the Restatement"). *Stettler v. Hester*, 92 N.M. 26 (Ct. App. 1978). The New Mexico Uniform Jury Instruction on negligent misrepresentation provides as follows:

> A party is liable for damages caused by his negligent and material misrepresentation.
> A material misrepresentation is an untrue statement which a party intends the other party to rely on and upon which the other party did in fact rely.
> A negligent misrepresentation is one where the speaker has no reasonable ground for believing that the statement made was true.

NMRA 13-1632 (emphasis added). The New Mexico Uniform Jury Instruction on fraud provides as follows:

> A party is liable for damages proximately caused by [its] fraudulent misrepresentation. To prove fraud, . . . [the party claiming fraud] must prove:

4

>        First, a representation of fact was made which was not true;
>        Second, either the falsity of the representation was known to the party making it or the representation was recklessly made;
>        Third, the representation was made with the intent to deceive and to induce . . .[the party claiming fraud] to rely on the representation; and
>        Fourth, . . .[the party claiming fraud] did in fact rely on the representation.
>
>    Each of these elements must be proved by clear and convincing evidence.

NMRA 13-1633 (emphasis added). Under New Mexico law reliance and damages are essential elements of a claim for misrepresentation, whether negligent or intentional.

Because Tetra Tech bears the burden of persuasion on its counterclaims, the Court need only determine the absence of a genuine issue of material fact as to a single "essential element" of a counterclaim in order to grant summary judgment against Tetra Tech on that counterclaim. *Adamson*, *supra*. The Court concludes for the reasons set out below that Tetra Tech generally has failed to make out genuine issues of fact as to its reliance on Ramona's representations. In the instances where Tetra Tech arguably has made out a genuine issue as to reliance, it has failed to make out a genuine issue of material fact as to damages resulting from its reliance. Thus, with respect to each alleged misrepresentation, Tetra has failed to establish a genuine issue of material fact as to at least one essential element of a misrepresentation claim.

Tetra Tech claims that "[Ramona] concealed and misrepresented [its improper billing practices] in order to induce Tetra Tech to pay unjustified amounts to [Ramona]." [Doc. 195 at 20] However, Tetra Tech concedes as an undisputed fact that "[due to discrepancies and deviations from industry standards, [Ramona's] unwillingness to adjust its billings to account for discrepancies and/or reflect industry standards, Tetra Tech *did not pay [Ramona] for outstanding invoices incurred by Otay relative to the Project.*" [Doc. 195 at 18 (emphasis added)] This concession is largely dispositive of Tetra Tech's claims for negligent and

intentional misrepresentation. A claim for misrepresentation requires proof of a "*successful deception and action taken by the person deceived that would not have otherwise been taken.*" 37 Am. Jur. 2d, *Fraud* § 242 (2001). The undisputed facts establish that Ramona's alleged attempt to induce Tetra Tech to pay unjustified amounts failed. Tetra Tech did not suffer damages as a result of Ramona's alleged misrepresentations.

Tetra Tech asserts that it relied on Ramona's misrepresentations by incorporating them into its spreadsheet and in making a settlement offer in a August 7, 2008 letter. [Doc. 195 at 20] This argument founders on a related failure of proof. It is undisputed that Ramona did not accept Tetra Tech's offer, [Doc. 195 at 16] and as previously noted, Tetra Tech has not paid any of the outstanding Ramona-Otay invoices. Therefore, even if Tetra can be said to have relied on information provided by Ramona when it incorporated that information in its own spreadsheet and in making a settlement offer in an August 7, 2008 letter, the undisputed facts establish that Ramona's misrepresentations did not result in damages to Tetra Tech: Tetra Tech did not settle with Ramona and Tetra Tech did not pay any amount to Ramona in settlement of the disputed invoices.

Lastly, Tetra Tech argues Ramona's misrepresentations forced it to incur significant expenses in reconstructing the Ramona-Otay rental transactions, in defending Ramona's lawsuit, and in prosecuting its counterclaim. [Doc. 195 at 20-21] The Court will assume for purposes of analysis that Tetra Tech would not have incurred these expenses "but for" the misrepresentations alleged in Counts IV and V of Tetra Tech's counterclaim. However, for misrepresentations to be actionable, the plaintiff's pecuniary loss must have been caused by the plaintiff's *reliance* on the defendant's representation. Restatement § 546, cmt. b ("For a misrepresentation to be a

6

cause in fact of the pecuniary loss that results from the plaintiff's action or inaction, the plaintiff must have relied upon the misrepresentation in incurring the loss."). Even if Ramona's misrepresentations were in some sense a cause of Tetra Tech's incurring various expenses, Ramona's misrepresentations are not actionable under the torts of negligent or intentional misrepresentation unless Tetra Tech's responses--reconstructing the Ramona-Otay rental transactions, defending Ramona's lawsuit, and bringing its own counterclaims--could be considered types of reliance. Tetra Tech has not cited any authority supporting its position that these actions amounted to reliance. The Court concludes that as a matter of law, Tetra Tech's actions in reconstructing the Ramona-Otay rental transactions, defending against the present lawsuit, and in bringing its counterclaims cannot be characterized as acts of reliance. Indeed, they appear to the court to be precisely the opposite of reliance. *See Black's Law Dictionary* 1404 (9th ed. 2009) (defining "reliance" as "trust by a person, esp. when combined with action based on that . . . trust.").

**CONCLUSION**

Tetra Tech has failed to come forward with evidence sufficient to create genuine issues of fact establishing a single instance where it suffered damages as the result of reliance upon Ramona's alleged misrepresentations. Accordingly, Ramona is entitled to summary judgment as to Counts IV and V of Tetra Tech's Amended Counterclaim.

WHEREFORE,

IT IS HEREBY ORDERED that Ramona's *Motion* [Doc. 176] is granted and that summary judgment shall be entered against Tetra Tech as to Counts IV and V of Tetra Tech's Amended Counterclaim.

SO ORDERED this 25th , day of July, 2010.

M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE