IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES, For the Use of RAMONA
EQUIPMENT RENTAL, INC., d/b/a/ ONE STOP
EQUIPMENT RENTAL & SALES,
a California corporation,

        Plaintiff,

vs.                                                                                                  No. 08-CV-0811 MCA/ACT

LIBERTY MUTUAL INSURANCE COMPANY;
TETRA TECH, INC.; OTAY GROUP, INC.; ALEX HALL;
STEVE LARSON; DARRIN BENDER;
BROOKS DOUGLASS;  ALEX LARSON; ROY WISE; and
WESTSIDE EQUIPMENT RENTAL AND SALES, LTD.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff Ramona Equipment Rental, Inc.'s Motion [Doc. 175] seeking summary judgment as to Count III of Defendant Tetra Tech, Inc.'s Amended Counterclaim. [Doc. 100] The Court has considered the papers and exhibits offered in support of and in opposition to the Motion, the relevant law, the arguments made by counsel at hearing on July 6, 2010, and is otherwise fully informed.  For the reasons set out below, the Court will grant the instant Motion.

**BACKGROUND**

In the Fall of 2007, Defendant, Tetra Tech, Inc. ("Tetra"), procured two contracts with the federal government for construction of border barrier fences and related facilities in southern New Mexico along the United States-Mexico international border ("the Project"). [Doc. 197 at 6] Tetra contracted with Defendant Otay Group, Inc. ("Otay"), for labor, material, equipment,

and services relating to the Project.[Doc. 197 at 6] In late September 2007, representatives of Otay and Plaintiff Ramona Equipment Rental, Inc. ("Ramona") met to discuss Otay's equipment rental needs and contract terms. [Doc. 175 at 3] Otay and Ramona entered into a written open account rental agreement pursuant to which Ramona was to supply Otay with equipment to be used by Otay on the Project. [Doc. 175 at 3; Doc. 197 at 6] Ramona provided equipment to Otay from December 2007 through early June 2008. [Doc. 175 at 4; Doc.197 at 10-11] As equipment was rented, Ramona's employees would prepare individual handwritten rental agreements. [Doc. 175 at 4; Doc. 197 at 11-12] This handwritten information was the basis for computer-generated invoices that Ramona submitted to Otay. [Doc. 175 at 4; Doc. 197 at 12] Otay appears to have suffered serious financial problems, and in June 2008, Otay ceased work on the Project. At that time Otay owed sums to various subcontractors and materialmen, including Ramona.

Prior to early June 2008, there had not been any direct communications between Ramona and Tetra. [Doc. 175 at 5; Doc. 197 at 12] In July 2008, representatives of Ramona and Tetra met in El Paso, Texas to discuss unpaid invoices for equipment that Ramona had provided to Otay. [Doc. 197 at 12] The Ramona-Tetra discussions did not result in a settlement of Ramona's claims for unpaid invoices, and Tetra has not paid any of the outstanding invoices for equipment that Ramona provided to Otay. [Doc. 197 at 13]

On September 5, 2008, Ramona filed the present action, asserting a claim under the Miller Act, 40 U.S.C. §§ 3131, *et seq.*, as well as various state-law claims. Tetra has counterclaimed, asserting as Count III of its Amended Counterclaim a claim under the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1, *et seq.* ("the NMUPA").

**SUMMARY JUDGMENT STANDARDS**

Fed. R. Civ. P. 56(b) provides that "[a] party against whom relief is sought may move,

with or without supporting affidavits, for summary judgment on all or part of the claim." Rule 56(c)(2) provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The Court of Appeals has succinctly summarized the standards governing a Rule 56 motion for summary judgment:

> Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law." A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.
>      The burden of showing that no genuine issue of material fact exists is borne by the moving party. Where . . .the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citations omitted). "The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Breyers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**DISCUSSION**

**1.     The NMUPA**

The NMUPA defines an unfair or deceptive trade practice as "a false or misleading oral or written statement . . .or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection

of debts by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person . . . ." NMSA 1978, § 57-12-2((D) (2003). The NMUPA sets outs eighteen activities that are deemed to be unfair or deceptive trade practices. Section 57-12-2(D)(1) through (18). Section 57-12-3 declares unfair or deceptive trade practices in the conduct of any trade or commerce to be unlawful.

In addition to authorizing enforcement actions by the attorney general, § 57-12-8, the NMUPA provides for private actions against violators. First, "[a] person likely to be damaged by and unfair or deceptive trade practice . . . may be granted an injunction. . . ." Subsection 57-12-10(A). Under Subsection A, "[p]roof of monetary damage . . . is not required." The Court does not understand Tetra to be seeking injunctive relief. Second, "[a]ny person who suffers any loss of money or property. . . as a result of any employment by another person of a method, act or practice declared unlawful by the [NMUPA] may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater." Subsection 57-12-10(B). In direct contrast to Subsection A, under Subsection B, "the aggrieved party must produce evidence of 'loss of money or property' as the result of the practice." *Page & Wirtz Construction Co. v. Solomon*, 110 N.M. 206, 211-12 (1990). Tetra clearly is seeking actual damages under Count III. [Doc. 100 at 16]

**2.     Tetra's claim**

Tetra asserts that Ramona committed various acts that constitute NMUPA violations, specifically including: (1) charging Otay prices that were higher than the prices it originally quoted to Otay, (2) excessively marking up re-rental rates, delivery fees, and other fees it charged Otay, (3) submitting invoices to Otay that contained improper charges, including (a) charges for equipment that was not on rent or that had been taken off rent, (b) duplicate charges,

(c) charges for maintenance or repairs to equipment covered by insurance, a damage waiver, or a protection plan, and (d) charges for equipment that was not provided, was provided in a damaged condition, or was only partially provided. [Doc. 197 at 18] The unfair and deceptive practices alleged by Tetra Tech can be divided into two categories: (1) unfair and deceptive practices directed at Otay prior to Otay's June 2008 demise, and (2) unfair and deceptive practices directed at Tetra following Otay's June 2008 demise.

3.     **Ramona's arguments in support of summary judgment**

In moving for summary judgment, Ramona argues that (1) Tetra has not come forward with evidence of that Ramona made a false or misleading representation, (2) Tetra has not come forward with evidence that any false or misleading representations were knowingly made, (3) Tetra lacks standing to assert a NMUPA claim, and (4) Tetra has not come forward with evidence that it has been damaged by an unfair or deceptive practice.

4.     **Pre-Demise NMUPA Violations**

   a.     **Charging prices higher than were originally quoted.**

Tetra has attached to its response a copy of a price list that Ramona sent to Wade Rowley, an Otay vice-president, on November 14, 2007.[Doc. 197-1 at 45-47]  The record does not contain any evidence establishing that the prices listed by Ramona were false or misleading at the time Ramona prepared the list, or that Ramona knew at the time it prepared the list that it could not or would not provide the listed equipment at the listed prices.  Therefore, Tetra has failed to establish a genuine issue of material fact as to the falsity or misleading character of the price list itself.  Alternatively, Tetra may be proceeding on the theory that the list itself reflected mutually-acceptable rental prices, and that the unfair and deceptive practices occurred later, if and when Ramona disregarded the quoted prices, charging Otay higher rates for various items of

equipment.  The Court cannot find evidence supporting this theory in the materials submitted by Tetra.[1]  Tetra has not provided the Court with even a single example of an invoice charging a price for an item of equipment that is higher that the price listed in the price list for that item of equipment. It may very well be that such evidence exists;  however, Tetra  has not placed it in the record before the Court.  The Court concludes that Tetra has not established a genuine issue of material fact as to its allegation that Ramona "engaged in a pattern and practice of charging equipment rental rates substantially higher than those that it represented and quoted to Otay." [Doc. 197 at 18].

    **b.**    **Excessive markups**

Ramona argues that Tetra has not come forward with  evidence that Ramona ever represented that it would limit its mark ups to a certain percentage:  "almost all of the testimonial evidence cited by Tera relates to the witnesses['] expectations and assumptions without regard to any statements made by Ramona. . . . Not once does Tetra offer any evidence, by affidavit or deposition testimony, that any Ramona employee represented that Ramona would only charge a specific markup on equipment rented to Otay." [Doc. 212 at 7-8] A careful examination of the evidence tendered by Tetra, [Doc. 197 at 6-10] demonstrates that Ramona is correct.  Tetra has not come forward with any evidence that an employee or officer of  Ramona represented to Otay that Ramona would limit its markup to a particular percentage.  Instead, Tetra relies entirely upon evidence of  the unilateral expectations of Otay's officers.  The testimony of Gary Arnold, Otay's project superintendent, quoted by Tetra [Doc. 197 at 6-7] establishes what *Arnold* said

---

[1]The Court reminds Tetra that in responding to a motion for summary judgment, "an opposing party may not rely merely on allegations . . . in its own pleading." Fed. Civ. P. Rule 56(e)(2).

and understood about markups, not what representatives of Ramona actually said. Even more telling is the deposition of Wade Rowley, who testified that his understanding that Ramona would be limited to a 20% markup was "my opinion, how I understood, *based not of* [sic] *discussion but just my expectation of how it's normally done*." [Doc. 197 at 9 (emphasis added)] Evidence of Otay's agents' unilateral expectations and understandings does not satisfy the NMUPA's requirement that the defendant have made a representation that was either false or misleading.

    c.    **Invoices containing improper charges**

Ramona's president, John Souza, conceded in his deposition testimony that invoices Ramona submitted to Otay incorporated various billing errors, such as date and time errors and double billing. [Doc.197 at 12] The Court will assume that an invoice is an implied representation that the entity submitting the invoice is entitled to the amounts set out in the invoice, and therefore, that an invoice that erroneously claims as due and owing amounts to which the billing party is not entitled can constitute a false or misleading representation for purposes of the NMUPA. Souza's testimony is sufficient to establish a genuine issue of material fact as to whether Ramona made false or misleading statements to Otay. However, to establish an unfair or deceptive practice, Tetra must show that the false and misleading representations were "knowingly made." *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100 (1991) (observing that "the misrepresentation need not be intentionally made, but it must be knowingly made"); *Eisert v. Archdiocese of Santa Fe*, 146 N.M. 179, __, 207 P.3d 1156, 1164 (Ct. App. 2009). Tetra has not come forward with evidence demonstrating that Ramona "knowingly made" the misrepresentations contained the in the invoices, as required by the NMUPA's definition of an unfair or deceptive practice. Tetra has not taken a single invoice incorporating a billing error as

acknowledged by Souza, identified the error, and explained why that particular error should be viewed as a knowing misrepresentation on Ramona's part. Tetra has not provided the Court with evidence describing the process by which allegedly improper charges came to be incorporated in invoices submitted to Otay. Without such evidence, it would be pure speculation for a factfinder to assume that an improper charge was knowingly made, rather than the result of mis-communication, oversight, or other simple error.[2]

## 5. Post-Demise Violations

The Court agrees with Ramona that Tetra cannot show that any statements that Ramona made directly to Tetra resulted in actual damages to Tetra. The discussions between Ramona and Tetra concerned payment for equipment that Otay rented from Ramona prior to Otay's demise. Tetra concedes that "Tetra Tech did not pay [Ramona] for outstanding invoices incurred by Otay relative to the Project." Thus, any false or misleading statements made by Ramona in the course of attempts to resolve the outstanding Ramona-Otay invoices could not have resulted in actual damages to Tetra. "[T]he aggrieved party must produce evidence of 'loss of money or property' as the result of the practice." *Page & Wirtz*, 110 N.M. at 211-12.

Citing *Page & Wirtz*, Tetra argues that it may recover a statutory award of $100 even in the absence of actual damages. This argument is based on a misreading of *Page & Wirtz*. In *Page & Wirtz*, the plaintiff claimed that the defendant contractor had committed a NMUPA violation by, among other things, submitting fraudulent invoices. The owner had refused to pay the invoices. The question before the Supreme Court was whether substantial evidence

---

[2]Tetra's failure of proof was preceded by its related failure to even allege as part of its NMUPA claim that the alleged misrepresentations were knowingly made. See Doc. 100, ¶¶ 33-49.

supported an award of damages under § 57-12-10(B).  The Supreme Court held that evidence that the contractor had submitted deceptive and misleading invoices made out a violation of the NMUPA.  The Supreme Court then considered the question of whether an award of damages could be sustained. Justice Ransom, writing for the Supreme  Court, stated that "paragraph B includes only those persons 'who suffer any loss of money or property'" and  that "*in either case* [actual damages or statutory damages] the aggrieved party  must produce evidence of 'loss of money or property' as a result of the practice." *Page & Wirtz*,  110 N.M. at 211-12 (emphasis added).

Unfortunately the last two paragraphs Justice Ransom's opinion in *Page & Wirtz* are rather puzzling.  See *Pedroza v. Lomas Auto Mall*, 663 F. Supp. 2d 1123 (D. N.M. 2009) (discussing *Page & Wirtz*). As previously noted, the plaintiff had refused to pay the invoices, and therefore could not have suffered a loss as the result of the contractor's violation of the NMUPA.  The result reached in the last two paragraphs--the Supreme Court's award of $300, representing treble statutory damages, notwithstanding the plaintiff's failure to prove a loss of money or property resulting from a deceptive practice--seems inconsistent with the Supreme Court's immediately preceding discussion, which carefully distinguished the standing requirements of Subsections A and B of  § 57-12-10, stating twice that Subsection B is limited to plaintiffs who have suffered a loss of money or property.  The Court believes that the apparent inconsistency can be explained by the fact that the defendant in *Page & Wirtz*  had conceded that an award of $300 would be proper if the jury's finding that the defendant had violated the NMUPA was upheld.  *Id.* at 208 ("Page & Wirtz argue on appeal that . . . assuming that Page & Wirtz, in some fashion, willfully did engage in an unfair or deceptive trade practice, [plaintiff] failed to establish the existence of any actual damages;  thus, his  recovery is limited to $300.").

As the Court reads *Page & Wirtz*, the Supreme Court clearly recognized that Subsection B extends only to plaintiffs who have suffered a loss of money or property as the result of an unfair or deceptive practice. The references to $300 in the last two paragraphs merely are giving effect to the defendant's concession that if the jury finding of NMUPA violation was upheld, an award of $300 damages would be proper, and do not reflect the Supreme Court's understanding of how Subsection B would be applied where the defendant contests an award of statutory damages based on the plaintiff's failure to establish any loss of money of property. This reading is also reinforced by the Supreme Court's treatment of the related question of whether the $100 statutory damage amount should be trebled because the defendant had willfully engaged in an unfair or deceptive practice. The Supreme Court allowed treble statutory damages even though the question of the defendant's willful violation had not been raised. *Id.* at 212 ("We do not address whether any violation here was willful as the question has not been raised. Page & Wirtz requested that if the judgment with respect to the Unfair trade Practices Act was affirmed, [plaintiff's'] damages should be limited to $300.")  In allowing treble statutory damages, the Supreme Court again was merely giving effect to the defendant's concession.

There is one other anomaly in *Page & Wirtz* that deserves a brief comment: the Supreme Court's treatment of attorney's fees. The NMUPA provides that "[t]he court *shall* award attorney's fees. . . to the party complaining of an unfair or deceptive trade practice. . .if he prevails. Section 57-12-10(C) (emphasis added). The Supreme Court did not award the plaintiff any attorney's fees. 110 N.M. at 212 (remanding for entry of an award of $300 on plaintiff's NMUPA claims with no mention of attorney's fees). The Supreme Court's omission of an award of attorney's fees is especially telling considering that the trial court, consistent with § 57-12-10(C), had awarded $8,000 in attorney's fees to the plaintiff. 110 N.M. at 208. Since an award

of attorney's fees to a prevailing plaintiff is mandatory under § 57-12-10(C), the Supreme Court's omission of an award of attorney's fees is a further indication that the Supreme Court was merely giving effect to the defendant's stipulation.

To summarize, the Court reads *Page & Wirtz* as holding that actual loss is a standing requirement under Subsection B of § 57-12-10. A plaintiff who has been subjected to an unfair or deceptive practice, but who has not suffered a loss as the result of the practice, lacks standing to sue for either actual or statutory damages under § 57-12-10(B).[3]

Tetra's position is similar to that of the plaintiff in *Page & Wirtz*: "while [plaintiff] complained of various irregularities and problems in the invoices submitted with the final bill for the project, [plaintiff] paid none of them, under protest or otherwise." 110 N.M. at 211. Like the plaintiff in *Page & Wirtz*, Tetra has not paid any of the disputed invoices; consequently, also like the plaintiff in *Page & Wirtz*, Tetra cannot show that it suffered a loss as the result of any unfair or deceptive practices engaged in by Ramona in billing Otay or in attempting to persuade Tetra to pay the unpaid invoices. Because Tetra cannot establish an actual loss resulting from

---

[3]The Court is aware that its interpretation of *Page & Wirtz* conflicts with decisions of the New Mexico Court of Appeals. *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 446-47 (Ct. App. 2007); *Jones v. General Motors Corp.*, 124 N.M. 606, 611 (Ct. App. 1998). Neither of these opinions discussed the procedural facts of *Page & Wirtz*, or the tension between the plain language of § 57-12-10(B) and the Court of Appeals' interpretation of *Page & Wirtz*. "[A federal court] [is] not bound by decisions of state intermediate appellate courts. . . .; rather, [a federal court][is] to follow decisions of the state's highest court, or, when none is on point, predict how it would rule on the issue." *Grynberg v. Total, S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008). The Court is reluctant to attribute to the New Mexico Supreme Court a disregard for the clearly expressed will of the New Mexico Legislature. *See State v. Phillips*, 145 N.M. 615, 621 (Ct. App. 2009) (rejecting interpretation of Supreme Court opinion that would have required the Court of Appeals to "attribute to [the] Supreme Court a disregard for well-established and clearly applicable rules of statutory construction designed to insure that courts respect the expressed will of the Legislature"); *Reule Sun Corp. v. Valles*, 147 N.M. 512, 615-16 (2009) (discussing and applying "plain meaning" rule of statutory construction).

Ramona's conduct, Tetra lacks standing to sue for statutory damages under Subsection B.

**CONCLUSION**

The Court concludes that Tetra failed to demonstrate genuine issues of material fact as to whether Ramona represented to Otay that it would limit markups to a certain percentage, not to exceed industry standards. The Court concludes that Tetra failed to demonstrate genuine issues of material fact as to whether improper charges contained in invoices that Ramona submitted to Otay were knowingly made. Lastly, the Court concludes that Tetra failed to demonstrate genuine issues of material fact as to whether any representation that Ramona made directly to Tetra with respect to unpaid invoices resulted in damages to Tetra.

WHEREFORE, IT IS HEREBY ORDERED that Plaintiff-Counterclaim-defendant Ramona Equipment Rental, Inc.'s *Motion* [Doc. 176] seeking summary judgment as to Count III of Defendant-Counter-claimant Tetra Tech, Inc.'s Amended Counterclaim [Doc. 100] is granted, and that Count III is dismissed with prejudice.

**SO ORDERED this 25th day of July, 2010.**

M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE